**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**DEMETRIUS ANTWON McGREGOR,**

      **Petitioner,**

v.

**UNITED STATES OF AMERICA,**

      **Respondent.**

                    **Civil No. 2:25cv45
Criminal No. 2:19cr34**

## OPINION AND ORDER

This matter is before the Court on Demetrius Antwon McGregor's ("Petitioner") pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.   ECF Nos. 143.   The Government filed a brief in opposition to Petitioner's motion, ECF No. 147, and Petitioner thereafter filed a reply brief and a motion seeking the appointment of counsel, ECF Nos. 150, 152.   For the reasons explained below, Petitioner's § 2255 motion is **DISMISSED** and **DENIED**, and his associated motion for counsel is **DENIED**.

### I. BACKGROUND

In April of 2019, a federal grand jury returned a superseding indictment charging Petitioner with four felony counts: (1) two counts of possessing a firearm by a convicted felon, in violation 18 U.S.C. §§ 922(g)(1) & 924(e); (2) one count of possessing cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (3) one count of possessing a firearm in furtherance of drug trafficking, in violation of 18

U.S.C. § 924(c). ECF No. 14. In August of 2019, Petitioner filed a motion to suppress through his court-appointed counsel David Good.[1] ECF No. 35. The suppression motion challenged a search warrant that was executed in October of 2017 at a residence on Kingsley Lane in Norfolk, Virginia ("Kingsley residence") following Petitioner's arrest for his alleged involvement in a murder. Although the Government's position (before and after the search) was that Petitioner was living at the Kingsley residence when it was searched, Petitioner's position is that the residence was his mother's. A hearing on the suppression motion was held before another judge of this Court, and at the conclusion, the Court denied Petitioner's suppression motion finding that there was probable cause to support the search warrant. ECF No. 67, at 127-28. Alternatively, the Court found that even if probable cause was lacking, the "good faith exception" to the warrant requirement was applicable — a finding that independently supported denial of the suppression motion. Id. at 128-30.

Shortly after the suppression hearing, on November 20, 2019, a second superseding indictment was returned charging Petitioner with the same four felonies. ECF No. 44. In early 2020, Mr. Good filed a motion to withdraw as counsel due to a breakdown in communication. ECF No. 53. After conducting a hearing on the

---

[1] Petitioner was initially represented by the federal public defender and then by an appointed Criminal Justice Act attorney, both of whom withdrew from representation before Mr. Good was appointed. See ECF Nos. 22, 27.

motion to withdraw and granting it, ECF No. 55, the Court appointed Larry Woodward to represent Petitioner, ECF No. 56.  In September of 2020, after the case was reassigned to the undersigned judge, Petitioner proceeded to a trial by jury.  At the conclusion of the trial, the jury returned a guilty verdict as to all four counts. ECF No. 80.  After several continuances requested by the parties, in July of 2022, Petitioner was sentenced to a term of 360 months' imprisonment.  ECF No. 117.

Petitioner filed a direct appeal to the United States Court of Appeals for the Fourth Circuit alleging that this Court: "(1) erred in denying his motion to suppress evidence recovered from [the Kingsley residence], (2) erred in denying his Fed. R. Crim. P. 29 motion for a judgment of acquittal, and (3) imposed an unreasonable sentence." United States v. McGregor, No. 22-4438, 2024 WL 368330, at *1 (4th Cir. Jan. 31, 2024).[2]  The Fourth Circuit found "no error" and affirmed Petitioner's convictions and sentence.  Id.

In January of 2025, Petitioner timely filed the instant § 2255 motion advancing eighteen grounds for relief.  ECF No. 143.  This Court thereafter granted the Government's motion to compel Petitioner's former counsel to file affidavits, ECF Nos. 145-46, and affidavits were submitted by Mr. Good and Mr. Woodward.  After briefing extensions were granted to both parties, the § 2255 motion

---

[2] Mr. Woodward represented Petitioner on appeal.  ECF No. 122.

was fully briefed, and it is now ripe for consideration.  ECF Nos. 146, 151-52.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally challenge their conviction or sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or [the sentence or conviction] is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  A § 2255 motion is "expected to state facts that point to a real possibility" that one of the above types of error occurred, and therefore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."  United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013).

The right to pursue a collateral attack does not displace a direct appeal as the ordinary method for challenging a conviction or sentence, so the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised "during [the] initial criminal proceeding or on direct appeal."  See United States v. McKinney, 60 F.4th 188, 193 (4th Cir. 2023).  Accordingly, with limited exceptions, a petitioner advancing claims asserted for the first time in a § 2255

4

motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). The "higher hurdle" applies because, once a petitioner's opportunity to pursue a direct appeal has been exhausted, there is "a final judgment [that] commands respect." Id. at 165-66.

For this reason, a district court generally may not consider the merits of a defaulted claim unless a petitioner can show two things: (1) "cause" excusing the failure to directly appeal the alleged errors; and (2) "actual prejudice resulting from the errors." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). Alternatively, in rare instances a petitioner may overcome their default by demonstrating "actual innocence by clear and convincing evidence." Id. at 493.

In contrast to the bar on advancing previously waived claims, a claim that defense counsel provided ineffective assistance, a type of constitutional violation, is appropriately advanced for the first time in a § 2255 motion. United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). A petitioner must prove an ineffective assistance claim by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

The Sixth Amendment guarantees that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Applying the Sixth Amendment, the Supreme Court has held that the right to counsel is the right to "effective

assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984). To obtain relief based on an allegation of ineffective assistance, a petitioner must typically establish that: (1) counsel's performance was so deficient that it "fell below an objective standard of reasonableness"; and (2) counsel's deficient performance prejudiced the petitioner. Id. at 687–88.

With respect to performance, the Constitution does not guarantee errorless representation, meaning that a petitioner must demonstrate that their counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687. Because reviewing courts strongly presume that counsel exercised reasonable professional judgment, id. at 689, it is only in "relatively rare situations" that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). As "it is all too easy" to challenge an act, omission, or strategy after it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Ultimately, the "basic lesson" of Strickland is not just deference but high deference, and attorneys "can be selective and strategic without risking an ineffective assistance of counsel claim." United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014).

6

Considering <u>Strickland</u>'s prejudice prong, a petitioner must affirmatively prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

### III. DISCUSSION – § 2255 Motion

#### A. Ineffective Assistance

#### 1. Claim 1

Petitioner's first ineffective assistance claim alleges that Mr. Good, Mr. Woodward, and other attorneys that represented Petitioner early in this case, were ineffective for failing to challenge the fact that Petitioner was not timely read his <u>Miranda</u> rights on the day of his arrest. Specifically, Petitioner asserts that: (1) after he was "in custody" during his arrest, he was asked if he had a firearm or drugs on his person; and (2) any un-<u>Mirandized</u> statement he purportedly made about having a gun should have been suppressed.[3] ECF No. 143, at 4, 7-9. In response, the Government argues that the admissibility of Petitioner's statement is a non-issue because the gun was discovered when he was lawfully searched incident to arrest. ECF No. 147, at 9-10.

---

[3] While arresting officers/agents testified that Petitioner admitted to having a gun on his person before they searched him and found the gun, ECF No. 61, at 44-45, Petitioner denies making any incriminating statements while he was being arrested, ECF No. 143, at 7.

A review of the record and relevant case law clearly reveals that Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice. As argued by the Government, defense counsel reasonably elected not to challenge the admissibility of any inculpatory statement about the gun because it was inevitable that the gun would be discovered when Petitioner was searched incident to his arrest. See United States v. Buster, 26 F.4th 627, 634 (4th Cir. 2022) (explaining that even in instances when a constitutional violation occurred, the evidence can be admitted if it would have been "inevitably discovered . . . by lawful means," including by "a search incident to arrest") (omission in original). Here, as the seized firearm would surely have been found even if Petitioner remained silent, and would be admissible at trial regardless of any statement Petitioner made (or did not make), Petitioner's collateral attack on his counsel's performance predicated on Miranda fails both prongs of Strickland.[4]

---

[4] Although Petitioner's first of fifteen ineffective assistance claims is based on his lawyer's failure to challenge the fact that he "was not read his Miranda rights," ECF No. 143, at 8, Petitioner's background facts offered within such claim indicate that he also told his lawyers that he "did not have a gun" when arrested. Id. at 7. Petitioner, however, offers no further discussion suggesting that the seized gun was "planted" on him (or that it never existed). He likewise fails to offer any affidavits or other evidence capable of suggesting that officers/agents planted or fabricated the gun. Accordingly, the cursory assertion that he did not possess a firearm, advanced within an ineffective assistance claim predicated on a Miranda violation, is summarily rejected. See Dyess, 730 F.3d at 359 (indicating that the district court did not err by limiting its analysis "to the 16 claims" in the amended § 2255 motion that were "supported by facts and argument" rather than addressing the "roughly 40 claims" that the petitioner argued should have been analyzed).

## 2. Claim 2

Petitioner's second ineffective assistance claim alleges that Mr. Good and Mr. Woodward were deficient for: (1) failing to challenge the testimony from a probation officer who linked Petitioner to the Kingsley residence at the suppression hearing and at trial; and (2) for failing to subpoena a different probation officer to testify on the same subject. ECF No. 143, at 9-10. As argued by the Government, the witness who testified that Petitioner reported living at the Kingsley residence permissibly did so, and the records on which she relied were likewise admissible. Petitioner therefore fails to demonstrate that either counsel was constitutionally deficient for failing to challenge the disputed testimony in the manner he now suggests.[5]

Petitioner also fails to demonstrate Strickland prejudice as he does not offer an affidavit, or even an unsworn proffer, suggesting that the testimony of the second probation officer would have helped (rather than hurt) his case. Stated another way, Petitioner offers no valid reason to question the approach taken by his lawyers, or the results obtained, in light of the admissible

---

[5] Both Mr. Good and Mr. Woodward effectively cross-examined the probation officer and sought to undercut the reliability of her testimony, first in support of suppression and later at trial. This included eliciting the concession that about 50% of people on probation do not notify their probation officer when they move to a new address, ECF No. 61, at 86-87, and the concession that the probation office never conducted a home visit to confirm that Petitioner lived at the Kingsley residence, ECF No. 128, at 426-27. Even in hindsight, Petitioner fails to identify an alternative strategic approach more likely to succeed.

evidence suggesting that Petitioner had reported that he lived at the Kingsley residence (at least in the past).[6]  Petitioner's second claim for relief is therefore rejected.

### 3. Claim 3

Petitioner's third claim asserts that Mr. Good and Mr. Woodward were ineffective for failing to call his mother as a witness — to testify about the Kingsley residence — at his suppression hearing and at trial.  This claim similarly fails under both prongs of Strickland.

First, as to performance, counsel has "enormous deference" when making strategic decisions at a hearing or at trial, and "the decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks."  United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quotation marks omitted).  Here, Mr. Good explained in his affidavit that he had "grave concerns" about the truthfulness of the anticipated testimony, and Petitioner does not provide contrary facts undercutting this assertion.  ECF No. 147-1.  Furthermore, Petitioner himself confirmed under oath at the evidentiary hearing that he did not want to call his mother to provide evidence in support of his challenge to the search warrant.

---

[6] Among other evidence, Petitioner was arrested outside the Kinglsey residence, his car had been located in the area overnight, and cell phone records and witness statements linked him to the residence.  ECF No. 61, at 36-37, 41, 53-54.

ECF No. 61, at 100; see Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Similarly, Mr. Woodward provided a valid strategic reason not to call Petitioner's mother as a trial witness based on: (1) his belief that the jury would perceive her as a biased witness; and (2) his concern that she would confirm that Petitioner had access to the Kingsley residence and/or that the drugs and guns in the apartment were not hers. ECF No. 147-2, at 1-2; cf. Huffington v. Nuth, 140 F.3d 572, 581 (4th Cir. 1998) (recognizing that a parent's testimony must be evaluated "in light of the potential bias inherent in such testimony").

Second, as to prejudice, Petitioner does not present an affidavit or other evidence documenting how his mother would have testified, nor does he explain how such testimony could effectively undercut the other evidence linking him to the Kingsley residence. See Johnson v. McCall, No. 2:09-1532, 2010 WL 936726, * 4 (D.S.C. Mar. 15, 2010) ("[M]ere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice."). Petitioner therefore fails to demonstrate a reasonable likelihood of a different outcome had his mother testified. For these reasons, Petitioner's claim fails.

### 4. Claim 4

Petitioner's fourth ineffective assistance claim asserts that several sanitation workers were present in the area at the time of

his arrest, and that had his lawyers located these witnesses, they would have testified that Petitioner was not carrying a gun or drugs at the time of his arrest and that he verbally denied having a gun. This conclusory claim, advanced without any evidence even suggesting that these witnesses saw or heard enough to testify to this effect, or that they would support Petitioner's self-serving version of events, fails to satisfy Strickland's prejudice prong. See Dyess, 730 F.3d at 359 ("[V]ague and conclusory allegations . . . may be disposed of without further investigation by the District Court."). Importantly, "[i]n federal jurisprudence it is well established that a claim of ineffective assistance predicated on a failure to call witnesses fails where affidavits verifying the witnesses' testimony are not provided." Slate v. Vargo, No. 1:12cv1477, 2014 WL 3378627, at *7 (E.D. Va. July 8, 2014) (citing Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990)); see Nelson v. Johnson, No. 1:10cv736, 2011 WL 1790129, at *4 (E.D. Va. May 5, 2011) (explaining that failure "to proffer affidavits" from the witness that counsel purportedly "fail[ed] to investigate and subpoena for trial" was "fatal" to the petitioner's § 2254 ineffective assistance claim). Accordingly, Petitioner fails to demonstrate deficient performance or resulting prejudice.

## 5. Claim 5

Petitioner's fifth claim alleges that both Mr. Good and Mr. Woodward were ineffective for failing to challenge: (1) the fact

that Petitioner was linked to multiple addresses (his arrest warrant did not list Kingsley Lane as his residence); and (2) that the Kingsley residence was not linked to the murder being investigated. This claim fails both Strickland prongs.

First, as discussed throughout this opinion, both lawyers expressly and effectively challenged Petitioner's connection to the Kingsley residence, thus fully undercutting the allegation of constitutionally deficient performance. Second, Petitioner falls far short of demonstrating Strickland prejudice as he fails to demonstrate that either counsel overlooked a potentially meritorious argument that had a reasonable likelihood of resulting in suppression or a different outcome at trial. While it is true that Petitioner was linked to multiple different addresses, Petitioner fails to identify a valid legal basis to argue that the law requires a "nexus" between the addresses themselves or between the murder under investigation and his home. The important nexus was between Petitioner and the Kingsley residence, a nexus that was developed during the investigation leading up to, and following, Petitioner's arrest. Petitioner's fifth claim is therefore denied.

### 6. Claim 6

Petitioner's sixth claim alleges that Mr. Woodward was ineffective for failing to call expert witnesses to testify about the computer system used by the Probation Office and/or the license

plate reader system used by police.  The first system was used by a probation officer to confirm that Petitioner had previously reported that he lived at the Kingsley residence and the second was accessed by police to identify Petitioner's car parked in the area of the Kingsley residence.

Even at this late stage in the case, Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice with respect to this claim.  Similar to his claim that additional fact witnesses should have been called, Petitioner fails to articulate what the unidentified "experts" would testify to and fails to provide an affidavit or other information suggesting that there was a viable way to challenge either computer system/database.[7]  See Vandross v. Stirling, 986 F.3d 442, 452 (4th Cir. 2021) ("When a petitioner's ineffective assistance of counsel claim rests on trial counsel's failure to call particular witnesses, expert or otherwise, we require a specific proffer as to what an expert witness would have testified.  A petitioner's failure to do so reduces any claim of prejudice to mere speculation

---

[7] Petitioner does assert that the existence of the commercial license plate system was fabricated and claims that the U.S. Marshals "were in fact tracking his vehicle without a warrant."  ECF No. 143, at 17.  However, he does not provide any evidence supporting such speculative assertion.  See Chase v. United States, No. 5:15cr15, 2021 WL 327638, at *7 (W.D.N.C. Feb. 1, 2021) (rejecting the petitioner's § 2255 claim that an expert, if called, "would have testified" that Petitioner's computer was hacked because "he fails to identify a computer expert who would have testified, or proffer any exculpatory evidence that the expert would have presented at trial," rendering the claim "too vague and conclusory to establish ineffective assistance of counsel").

and is fatal to his claim.") (cleaned up).  Petitioner's sixth claim is therefore rejected.

### 7. Claim 7

Petitioner's seventh claim asserts that Mr. Good and Mr. Woodward were ineffective for failing to challenge the "good faith" exception to the exclusionary rule in order to challenge the search of the Kingsley residence.  Petitioner offers no valid challenge to the Court's ruling on the good faith exception, but instead relies on the speculative conclusion that had either attorney challenged the applicability of the exception, the "evidence seized would have been suppressed."  ECF No. 143, at 18.  This conclusory claim is rejected for failing to satisfy either prong of Strickland as Petitioner has not identified, and the record does not otherwise suggest, a meritorious basis to challenge the district court's ruling on the good faith exception.[8]  See Dyess, 730 F.3d at 359 (indicating that it is proper to reject conclusory allegations "without further investigation").

### 8. Claim 8

Petitioner's eighth claim asserts that Mr. Good and Mr. Woodward were ineffective for failing to challenge the illegal "GPX track[ing]" of Petitioner's vehicle.  ECF No. 143, at 19. Both counsel deny any knowledge that the Government used any "GPS

---

[8] Mr. Good, in fact, made a somewhat lengthy exclusionary rule argument at the suppression hearing.  ECF No. 61, at 110-16, 119-21.

tracking" or "tracker" on Petitioner's vehicle. ECF No. 147-1 ¶ 7; ECF No. 147-2 ¶ 9. Furthermore, Petitioner's references to the testimony at the suppression hearing about using a commercial product to "GPX track" Petitioner "for days" while he moved "from location to location" mischaracterizes the testimony. ECF No. 143, at 19. The actual testimony indicated that the police used a "commercial database"[9] to search Petitioner's license plate and they discovered that the most recent location information placed Petitioner's vehicle near the Kingsley residence at 12:40 a.m. and 3:00 a.m. on September 27, 2017. ECF No. 61, at 36-39. This was "about nine days before" Petitioner was arrested. Id. at 46. Other than these two snapshots in time, there was no further testimony suggesting "tracking" of Petitioner's vehicle.

To the extent Petitioner asserts that his lawyers should have challenged the police's warrantless "search" of the license plate database, he fails to demonstrate deficient performance or Strickland prejudice. First, Petitioner was not "tracked," but rather, while the police were trying to find him to arrest him for murder, his vehicle was located on a public street which provided one piece of circumstantial evidence of his whereabouts. Id. at 45-46. Second, Petitioner fails to provide evidence or argument

---

[9] Contrary to Petitioner's speculative statements claiming that the police directly tracked him, the testimony at the suppression hearing revealed that the license plate database was not generated from police plate readers, but instead, was a "civilian" database compiled from information collected by "repo trucks." ECF No. 61, at 46-47.

suggesting that the database search was unconstitutional, and further fails to provide evidence or argument suggesting that the search warrant for the Kingsley residence was dependent upon this information. To the contrary, the warrant affidavit indicates that the police were aware that Petitioner's "immediate family members" lived at the Kingsley residence, that Petitioner was arrested outside the residence, and that Petitioner's mother stated that he had been living there for about a week and had belongings there. ECF No. 39-2, at 6. Petitioner's unsupported contention that counsel should have challenged the vehicle "tracking" therefore fails both prongs of Strickland.

### 9. Claim 9

Petitioner's ninth claim is again directed toward both attorneys, and asserts that they were ineffective for failing to challenge Petitioner's "constructive possession" of the drugs and guns found in the Kingsley residence. ECF No. 143, at 21. Petitioner focuses on the purported lack of a link between him and the residence, and/or whether any search based on his probation documents should have been "limited to his specific bedroom." Id.

Again, Petitioner fails to demonstrate constitutionally deficient performance or resulting prejudice. The Kingsley residence was searched pursuant to a warrant and Mr. Good attempted to undermine that warrant despite various forms of evidence linking Petitioner to the residence. The fact that this challenge proved

17

unsuccessful does not equate with constitutionally deficient performance.

Turning to Mr. Woodward's performance, the most critical issue at trial turned on whether the Government carried its burden to demonstrate that Petitioner constructively possessed the contraband in the Kingsley residence. See ECF No. 126, at 49, 53 (revealing jury instructions defining constructive possession); id. at 89 (reflecting Mr. Woodward's statements to the jury during his closing argument: "I have one theme. One theme. They didn't prove that Mr. McGregor is responsible for anything in that apartment under the standard that we have"); id. at 92-93 (arguing, as Petitioner did in his § 2255 motion, that the Government "did not send one piece of evidence to be fingerprinted" and did not obtain any DNA); id. at 95 (arguing that "every piece of evidence in this case screams out that there's multiple people that had access" to the Kingsley residence); id. at 126 ("[Y]ou don't have any idea when anything was put there, who put it there, was it all put there at the same time.").

Petitioner's ninth claim is easily rejected as the record plainly reveals that both his attorneys consistently challenged the sufficiency of the evidence linking Petitioner to the residence and the contraband found there. Petitioner thus fails to demonstrate that his lawyers were constitutionally deficient, or

that there is a reasonable likelihood of a different outcome had they performed differently.

## 10. Claim 10

Petitioner's tenth ineffective assistance claim is three sentences long and challenges Mr. Woodward's performance at sentencing by claiming that Mr. Woodward should have challenged the reasonableness of a 360 month within-Guideline sentence. This abbreviated and conclusory argument fails to demonstrate constitutionally deficient performance. It also fails to establish a reasonable probability of a lower sentence had counsel challenged the presumptive reasonableness of a Guideline sentence.[10] Petitioner's tenth claim is therefore denied.

## 11. Claim 11

Petitioner's eleventh claim asserts that Mr. Woodward was ineffective because he failed to follow Petitioner's instruction to withdraw from the case and allow another attorney to handle the appeal. Petitioner appears to argue that another attorney could have pursued ineffective assistance claims on direct appeal or raised other unidentified issues that would have purportedly resulted in a more favorable outcome.

---

[10] Mr. Woodward argued for a downward variance at sentencing and argued that a sentence of 360 months was greater than necessary. ECF No. 130, at 91-93. Mr. Woodward also challenged the reasonableness of the sentence on appeal, a claim that was rejected by the Fourth Circuit. McGregor, 2024 WL 368330, at *2 ("We conclude that McGregor's sentence is procedurally and substantively reasonable.").

Even assuming, for the sake of argument, that Mr. Woodward committed a constitutional error by failing to withdraw,[11] Petitioner fails to demonstrate <u>Strickland</u> prejudice. Importantly, Petitioner makes only vague references to "other claims" that could have been brought on direct appeal, and thus, falls far short of identifying a reasonable probability of a different outcome. ECF No. 143, at 22; <u>see Mason</u>, 774 F.3d at 829 ("As a general matter, only when ignored issues are clearly stronger than those presented should we find ineffective assistance for failure to pursue claims on appeal.") (cleaned up). To the extent Petitioner does indicate that he wished to advance an appeal claim challenging Mr. Woodward's effectiveness at trial, not only does Petitioner fail to articulate a colorable ineffective assistance claim that could have been pursued, but he overlooks the fact that "[a]n ineffective assistance claim will be addressed on direct appeal only when an attorney's ineffectiveness conclusively appears on the face of the record." <u>United States v. Kemp</u>, 88 F.4th 539, 546 (4th Cir. 2023) (quotation marks omitted). Here, because Petitioner has not identified anything in the trial record that clearly reveals ineffectiveness, Petitioner's eleventh claim fails.

---

[11] While the Court assumes such fact for purposes of analysis, it notes that a February 28, 2024, letter from Petitioner to Mr. Woodward indicates that Petitioner wanted Mr. Woodward's representation to continue beyond the direct appeal as it asks him to represent Petitioner before the United States Supreme Court. ECF No. 135.

### 12. Claim 12

Petitioner's twelfth claim asserts, in a single sentence, that Mr. Good and Mr. Woodward's cumulative errors support § 2255 relief.   First, as argued by the Government, an ineffective assistance claim based on cumulative errors does not appear to have a valid basis in law.   See Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998) (holding that "ineffective assistance of counsel claims . . . must be reviewed individually, rather than collectively").   Second, even if such a claim is appropriate, collective consideration of counsels' purported errors in this case leads to the same result: Petitioner fails to demonstrate Strickland prejudice.   Petitioner's twelfth claim is therefore denied.

### 13. Claim 13

Petitioner's thirteenth claim asserts that Mr. Woodward was ineffective for failing to challenge the connection between Petitioner and the Kingsley residence, arguing that Mr. Woodward should have moved the Court for a "Franks hearing" in order to challenge the search warrant.   To be entitled to a Franks hearing, a defendant must make a "substantial preliminary showing" that an affiant's statements supporting the issuance of a facially valid search warrant were knowingly false and were "necessary to the finding of probable cause."   United States v. Moody, 931 F.3d 366,

370 (4th Cir. 2019). Here, the potential for a <u>Franks</u> hearing was addressed by Mr. Good at Petitioner's suppression hearing, and Petitioner personally elected, through his <u>under oath statement</u>, to not pursue a <u>Franks</u> hearing by calling his mother as a witness.[12] Importantly, when Petitioner expressed some initial confusion about the issue, the Court explained the necessary showing and offered to continue the suppression hearing to a date when his mother was available. ECF No. 61, at 95-99. After taking a 10 minute recess to allow the defense time to discuss the issue, Petitioner stated under oath that he did <u>not</u> want to call his mother as a witness and that he had no questions about his decision.[13] <u>Id.</u> at 100. As a result, the Court held that "there has been no offer of proof" as required for a <u>Franks</u> hearing, but allowed the defense five days to reconsider whether they wanted to submit "an affidavit" or some other evidence sufficient to warrant a <u>Franks</u> hearing. <u>Id.</u> at 101. Four days later, the Court issued a written order memorializing its ruling denying the suppression motion, again noting that the <u>Franks</u> issue had been held open should the defense wish to make an offer of proof. ECF No. 43. No such offer of proof was made.

---

[12] Petitioner's mother would have had to swear under oath that she never told officers that Petitioner had been staying with her at the Kingsley residence.

[13] As previously discussed, Mr. Good has reported his "grave concerns" about the truthfulness of Petitioner's mother's potential testimony, testimony that he feared the Court would not find credible. ECF No. 147-1, at 2-3.

Petitioner now appears to argue that Mr. Woodward, who was appointed to represent Petitioner 3 ½ months after the suppression hearing, had an obligation — based on Petitioner's demand — to seek to reopen the suppression hearing to introduce the very evidence that Petitioner previously swore he did not want to present.  Petitioner offers no explanation why the Court would consider granting such a belated request, nor does he suggest that his mother provided Mr. Woodward with the necessary affidavit. Instead, Petitioner merely offers the unsupported statement that his mother "was available as a witness during any Franks hearing." ECF No. 143, at 23.

Having offered no argument demonstrating why Mr. Woodward was constitutionally ineffective for failing to seek to reopen a long closed issue, Petitioner fails to demonstrate the first prong of Strickland.  Moreover, even if Mr. Woodward "should" have filed a motion seeking a Franks hearing, Petitioner cannot demonstrate a reasonable likelihood of a different outcome as: (1) it appears unlikely that the Court would have entered such belated request; and (2) Petitioner fails to present an affidavit or any other potentially admissible evidence from his mother (or anyone else) capable of satisfying the Franks "offer of proof" requirement. Accordingly, Petitioner's thirteenth claim is denied.

### 14. Claim 14

Petitioner's fourteenth claim asserts that his lawyers were ineffective for failing to challenge his actual innocence on the § 924(c) firearm count. This abbreviated claim offers no new basis for § 2255 relief, and the record clearly reveals that counsel reasonably advocated for suppression and for a not guilty verdict to this charge. While it is true that the Government's case relied on circumstantial evidence, that evidence was sufficient to support the jury's guilty verdict on the § 924(c) charge; a finding confirmed by the Fourth Circuit. McGregor, 2024 WL 368330, at *2 ("We have reviewed the record and conclude that substantial evidence supports McGregor's convictions."). Petitioner thus fails to satisfy either prong of Strickland.

### 15. Claim 15

Petitioner's final ineffective assistance claim challenges Mr. Woodward's refusal/failure to appeal the jury instruction defining "intent." Petitioner offers no explanation as to the legal error contained in any jury instruction, nor does he otherwise demonstrate that a claim challenging jury instructions would be "clearly stronger" that the claims that were raised on direct appeal. Although, during deliberations, the jury did have a question about the interplay between "intentionally" and "knowingly" in the jury instructions, the Court answered this question largely in line with the defense's request, see ECF No.

24

125, at 3-4, 37-40, further undercutting Petitioner's undeveloped argument that counsel should have raised this issue on appeal.[14] For these reasons, Petitioner's final ineffective assistance claim is denied as his conclusory allegation fails to demonstrate deficient performance on appeal, or resulting prejudice.

*     *     *

For the foregoing reasons, all fifteen of Petitioner's ineffective assistance of counsel claims are denied on the merits. The Court has considered Petitioner's request for an evidentiary hearing, ECF No. 152, at 5-6, but finds that the current record is sufficient to resolve all fifteen ineffective assistance claims as well as the direct claims addressed below.

### B. Prosecutorial Misconduct – LPR Data

Petitioner's first claim that seeks to directly challenge his conviction asserts that the Government engaged in prosecutorial misconduct by using a commercial license plate reader ("LPR") system "to GPX track Mr. McGregor prior to and during his arrest." ECF No. 143, at 25. In response, the Government argues that this claim is procedurally barred because it was not raised on direct appeal, further arguing that Petitioner's allegation that the prosecution acted unlawfully is conclusory and not supported by any legal precedent. ECF No. 147, at 27.

---

[14] Jury instruction number 22 also addressed the concept of knowledge or intent, and Petitioner's § 2255 motion fails to explain why such instruction was insufficient or incorrect. ECF No. 126, at 43.

The Government is correct that this claim is procedurally defaulted because it was not previously raised, <u>Fuller v. United States</u>, No. 4:13cr72, 2018 WL 3398129, at *3 (E.D. Va. July 11, 2018) ("Claims of prosecutorial misconduct . . . are procedurally defaulted if they could have been, but were not, raised on direct appeal."), and Petitioner fails to overcome his default by demonstrating "cause" for not raising the claim earlier or actual prejudice.[15]  Notably, the use of LPR data in this case was known to the defense long before trial, and even at this late stage of the proceedings, Petitioner fails to identify a valid basis to challenge the conduct of investigators or prosecutors.

Alternatively, even if this claim were procedurally proper, it would be denied on the merits as Petitioner clearly fails to demonstrate that using an LPR database to locate his car in a single location on a single day is the equivalent of tracking "the whole of his physical movements" as would be necessary to support a constitutional violation.  <u>Carpenter v. United States</u>, 585 U.S. 296, 313 (2018).  Furthermore, even if Petitioner had advanced a theory capable of demonstrating a constitutional violation, he offers no facts capable of suggesting that prosecutors "knew or should have known" that the use of LPR data amounted to an unconstitutional search.  <u>United States v. Roane</u>, 378 F.3d 382, 400 (4th Cir. 2004).  Importantly, actual or imputed knowledge

---

[15] As explained below, Petitioner also fails to demonstrate actual innocence.

that their acts were improper is a necessary element of proving that prosecutors engaged in "misconduct." Id. Accordingly, Petitioner's claim is dismissed as defaulted and is alternatively denied on the merits.

### C. Actual Innocence - § 924(c)

Petitioner next asserts that he is "actually innocent" of possessing a firearm in furtherance of drug trafficking, as charged in 18 U.S.C. § 924(c), due to the lack of evidence linking any firearms to drug trafficking. ECF No. 143, at 27-28. A claim of actual innocence is a "procedural mechanism" rather than a substantive claim for relief, but it still requires a petitioner "to support [their] allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Finch v. McKoy, 914 F.3d 292, 298 (4th Cir. 2019) (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). Here, as the Government highlights, Petitioner offers no new evidence of any kind, and his assertion of factual innocence is therefore rejected.

### D. Abuse of Discretion - Jury Instructions

Petitioner's final claim for relief asserts that the Court abused its discretion when it "failed and/or refused to properly instruct the Jury on 'intent'" after the jury raised a question during deliberations. ECF No. 143, at 30. As argued by the

Government, this claim is procedurally defaulted as it was not raised on direct appeal, and Petitioner fails to demonstrate cause or prejudice to overcome his default. Furthermore, as discussed in the preceding section analyzing Petitioner's final ineffective assistance claim, Petitioner does not identify any specific error committed by the Court, nor does he address the case law relied on by the Court to find that the term "intentionally" did not require a definition. ECF No. 125, at 37-40; cf. United States v. Jackson, 953 F.2d 640 (4th Cir. 1992) (unpublished table decision) ("A court has no general duty to define words of common understanding and meaning." (citing United States v. Chenault, 844 F.2d 1124, 1131 (5th Cir. 1988))). Accordingly, Petitioner's final § 2255 claim is dismissed as procedurally defaulted and is alternatively denied on the merits.

## IV. DISCUSSION – MOTION FOR COUNSEL

In a separately filed motion, Petitioner asks the Court to appoint counsel to assist in his § 2255 case. ECF No. 150. Petitioner is advised that no right to counsel exists for the collateral review of a conviction or sentence. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Rather, "[i]t is well settled that 'a criminal defendant has no right to counsel beyond his first appeal.'" United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (quoting Coleman v. Thompson, 501 U.S. 722, 756 (1991)). "Though in some exceptional cases due process does mandate the

appointment of counsel for certain postconviction proceedings," no due process concerns are present in this matter. <u>Id.</u> Similarly, because expansion of the record is unnecessary, the rules governing § 2255 proceedings do not support the appointment of counsel. <u>See</u> R. Gov. § 2255 Proc. for U.S. Dist. Cts. 6, 8. Accordingly, Petitioner's motion seeking the appointment of counsel is denied.

### V. CONCLUSION

For the reasons explained above, Petitioner's § 2255 claims that could have been brought on direct appeal are **DISMISSED** as procedurally defaulted, and all of his claims, including his defaulted claims and his ineffective assistance of counsel claims, are **DENIED** on the merits. ECF No. 143. Petitioner's separately filed motion seeking the appointment of counsel is likewise **DENIED**. ECF No. 150.

Finding that the procedural basis for the dismissal of Petitioner's defaulted § 2255 claims is not debatable, and alternatively finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. 28 U.S.C. § 2253(c); <u>see</u> R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-38 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate

from the United States Court of Appeals for the Fourth Circuit. Fed. R. App. P. 22(b); R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Opinion and Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to Petitioner and to counsel for the Government.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 3 , 2025